AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>DANIEL ROSENTHAL<br><br>*Defendant(s)* | )<br>)<br>) Case No.  3-14-71517<br>)<br>)<br>)<br>) |

FILED
DEC -9 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 2012 through October 2012__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1344 | Bank Fraud<br><br>Maximum Penalties: 30 years' imprisonment; $1,000,000 fine; 5 years' supervised release; $100 special assessment. |

This criminal complaint is based on these facts:

See Attachment A (affidavit of FBI Special Agent Elizabeth Hadley).
(Approved as to form _Denise M Barton_ (AUSA Denise Barton))

☑ Continued on the attached sheet.

_____
*Complainant's signature*
Elizabeth Hadley, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/8/14

_____
*Judge's signature*

City and state: San Francisco, CA

Magistrate Judge Laurel Beeler
*Printed name and title*

1-mjs



| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss. AFFIDAVIT |
| NORTHERN DISTRICT OF CALIFORNIA | ) |

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT CHARGING
DANIEL ROSENTHAL
WITH BANK FRAUD IN VIOLATION OF 18 U.S.C. § 1344

I, Elizabeth J. Hadley, declare and state as follows:

## I. INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") in San Francisco, California. I have been an SA with the FBI since October 2009. My primary responsibilities as an SA are the investigation of white collar crimes including investment fraud, corporate embezzlement, securities fraud, and bank fraud. Prior to my employment as an SA, I was employed for approximately seven years as a Certified Public Accountant ("CPA"). I received a Bachelor of Arts degree in Business Administration from the University of Richmond in 2002.

2.   I submit this affidavit in support of a criminal complaint and application for an arrest warrant for DANIEL ROSENTHAL ("ROSENTHAL") for bank fraud in violation of Title 18, United States Code, Section 1344. As set forth in more detail in this affidavit, there is probable cause to believe that, between May 2012 and October 2012, ROSENTHAL, using the name ARMEN ABROYAN ("ABROYAN"), participated in a scheme to defraud Mechanics Bank and multiple other financial institutions through the submission of fraudulent business loan applications on behalf of a company, SUNSHINE DAYDREAM, LLC ("SUNSHINE"). After receiving the fraudulent loan application, Mechanics Bank funded business loans to ROSENTHAL. ROSENTHAL used the proceeds from the loans, not for the purposes stated in his loan application, but instead for the purchase of gold and to make payments to other third parties. After receiving and using the loan proceeds, ROSENTHAL stopped making payments on the loan and stopped responding to Mechanics Bank's attempts to contact him.

3.   Throughout this Affidavit, unless otherwise indicated, "ROSENTHAL (ABROYAN)" will hereinafter be used to refer to the person who obtained loans in the name of ARMEN ABROYAN from financial institutions, including Mechanics Bank, between May 2012 and October 2012.

4.   Section 1344 provides, in relevant part, as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution [as defined in 18 U.S.C. § 20]; or

1

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

5. The facts set forth in this affidavit are based in part on information that I have learned from interviews of witnesses and conversations with other law enforcement agents, as well as from review of documents including bank records, loan files, and other financial records.

6. Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause for the issuance of a criminal complaint and an arrest warrant for ROSENTHAL, I have not described all the relevant facts and circumstances of which I am aware.

## II. BACKGROUND REGARDING BANK FRAUD SCHEMES

7. Based on my experience and training, I am aware that a common bank fraud scheme involves the use of false information to fraudulently enhance a prospective borrower's creditworthiness in order to procure a loan. Typically, the perpetrators of such schemes apply for a loan and, in so doing, provide false information relating to the prospective borrower's income, assets, and liabilities to fraudulently enhance the borrower's creditworthiness. This is done in order to procure a loan that the lender would not originate if it was aware of the prospective borrower's actual income, assets, and liabilities.

## III. STATEMENT OF PROBABLE CAUSE

### A. Individuals/Entities at Issue in the Investigation

8. This investigation concerns, among other entities and individuals, the following:

   a. DANIEL ROSENTHAL, a United States citizen, currently believed to be residing in Orange County, California.

   b. ARMEN ABROYAN, who is believed to be a Georgian citizen.

   c. SUNSHINE DAYDREAM, LLC ("SUNSHINE"), a limited liability company currently active and registered with the California Secretary of State on February 17, 2009; and

   d. LASALLE INTERNATIONAL HOLDINGS GROUP, INC. ("LASALLE"), also doing business as GOLDAMERA, a corporation currently active and registered with the California Secretary of State on October 24, 2001;

//
//

2

## IV. Specific Facts Supporting Probable Cause

### A. Loan Application to Mechanics Bank

9.  ROSENTHAL (ABROYAN), using the name ARMEN ABROYAN, submitted a loan application dated July 16, 2012 to Mechanics Bank for SUNSHINE. The application was submitted from the email address armen@sunshinedaydreamproductions.com and bears a signature of ARMEN ABROYAN. The materials submitted as part of the loan application contained copies of what appeared to be ABROYAN's personal financial statement, bank statement, and income tax returns and SUNSHINE's financial statements, aged accounts receivable report, and bank statements. I have reviewed the loan file, including the small business credit application and supporting documentation (hereinafter referred to collectively as "the loan application"), for loans totaling $950,000 from Mechanics Bank to SUNSHINE.

10. ROSENTHAL (ABROYAN) told Mechanics Bank employees that SUNSHINE had been in business since 2009 as an event planning and catering company with 14 full time employees as well as subcontractors. From approximately July 16, 2012 to August 29, 2012, at least two Mechanics Bank employees, including the relationship manager and the retail branch manager, visited ROSENTHAL (ABROYAN) at SUNSHINE's office at 50 California Street, San Francisco, California. Both Mechanics Bank employees stated SUNSHINE's rented office space had framed photos on the walls which appeared to be of events SUNSHINE had planned.

11. In July and August 2012, Mechanics Bank received financial documentation from ROSENTHAL (ABROYAN), including personal financial statements, bank statements, and income tax returns in the name of ABROYAN and financial statements, operating agreement, articles of organization, IRS employer identification number, and bank statements in the name of SUNSHINE. Certain of the documents submitted by ROSENTHAL (ABROYAN) and the false statements therein are discussed below in this Affidavit.

12. On or about August 13, 2012, Mechanics Bank internally approved business loans to SUNSHINE totaling $950,000, including a $300,000 working capital line of credit and a $650,000 business loan secured by equipment. The agreements, dated August 23, 2012, were executed by ROSENTHAL (ABROYAN) and an authorized signer of Mechanics Bank on or about August 29, 2012, at 50 California Street with the authorized Mechanics Bank signer present. Also on or about August 29, 2012, ROSENTHAL (ABROYAN) opened Mechanics Bank business checking account ending 7591 (hereinafter referred to as "Account 7591") in the name of SUNSHINE.

13. A representative of Mechanics Bank stated Mechanics Bank relied upon the information ROSENTHAL provided in the loan application and supporting documentation, to include bank statements and tax returns, when making the decision to approve the loans to SUNSHINE.

14. Mechanics Bank is a financial institution under 18 U.S.C. 20, because it is insured by the Federal Deposit Insurance Corporation (FDIC).

//

B. <u>Stated Use of the Loan Proceeds and Actual Use of the Loan Proceeds</u>

15.   In the loan application, ROSENTHAL (ABROYAN) stated that the loan proceeds would be used to hire two or three additional full time employees, purchase audio and video equipment, and lease new office space for SUNSHINE. The loan application included a copy of an invoice from LASALLE to SUNSHINE. The invoice, numbered 73385 and dated September 10, 2012, was submitted by ROSENTHAL (ABROYAN) as evidence of the sale and scheduled delivery of $802,252 worth of specific visual and audio equipment to SUNSHINE on September 21, 2012. In addition, on or about September 18, 2012, ROSENTHAL (ABROYAN) and Mechanics Bank executed a Commercial Security Agreement and a Change in Terms Agreement related to the $650,000 business loan. The agreements, dated September 13, 2012, were executed at the Mechanics Bank retail branch location on Sansome Street in San Francisco. The Commercial Security Agreement has an invoice purporting to be from LASALLE attached to it as a listing of the specific equipment guaranteed as collateral for the $650,000 business loan.

   a. On September 19, 2012, per the email instructions of ROSENTHAL (ABROYAN) and a handwritten note provided by ROSENTHAL (ABROYAN) to Mechanics Bank employees at the San Francisco retail branch location on September 18, 2012, two wire transfers in the amounts of $150,000 and $500,000 were sent by Mechanics Bank from Account 7591 to LASALLE's Citibank account.

   b. Throughout August and September 2012, as ROSENTHAL (ABROYAN) was securing loans from Mechanics Bank and other financial institutions, he sent a total of approximately $4.6 million in loan proceeds obtained from several financial institutions, including the $650,000 referenced above from Mechanics Bank, to a Citibank bank account in the name of LASALLE. The funds were received by LASALLE between August 13, 2012 and September 19, 2012. Between August 17, 2012 and October 1, 2012, LASALLE thereafter wired a total of approximately $3.9 million to Dillon Gage, a publicly traded company engaged in the sale of precious metals and financial derivatives of the metals, for the purchase of gold. After receiving the funds from LASALLE, Dillon Gage sent six shipments of approximately 50 kilograms of gold to SUNSHINE's business address, 50 California Street, San Francisco, California.[1] The largest shipment was for approximately 15 kilograms of gold, delivered as 500 one ounce gold bars. The receptionist of 50 California Street, Suite 1500, stated that multiple heavy packages approximately the size of shoe boxes were delivered to Suite 1500 for SUNSHINE and ROSENTHAL (ABROYAN) claimed all packages addressed to SUNSHINE.

16.   I have read documents which indicate YENOKIAN, the owner of LASALLE, was deposed as part of litigation with Mechanics Bank over the SUNSHINE loan funds. Although I have not

---

[1] In addition to the shipments to 50 California Street, one of the gold shipments, funded by LASALLE and worth approximately $22,050, was sent by Dillon Gage to First State Depository in Wilmington, Delaware. After GOLDAMERA failed to fund a ninth order for $132,747, Dillon Gage cancelled GOLDAMERA's account and has offered to return the $39,731 associated with the undelivered October 1, 2012 order.

4

read a transcript of the deposition, communications regarding that deposition indicate YENOKIAN's contact with SUNSHINE was through a Russian man. YENOKIAN was originally contacted by the Russian man in May or June 2012 and the man introduced SUNSHINE as a client who wanted to purchase $10 million of gold. YENOKIAN agreed to do business with SUNSHINE through GOLDAMERA. Based on my investigation of this case, I believe ROSENTHAL (ABROYAN) was working with yet to be identified co-conspirators. To the extent that YENOKIAN's statement is truthful, I believe the Russian man he referred to was one of those co-conspirators.

17. On September 12, 2012, upon receipt of an email from ROSENTHAL (ABROYAN) in which he approved a $300,000 advance on SUNSHINE's line of credit, Mechanics Bank transferred $300,000 from the line of credit to Mechanics Bank Account 7591.

   a. On September 14, 2012, Mechanics Bank received an email from ROSENTHAL (ABROYAN) requesting a $150,000 cashier's check made payable to LA Express Medical Transportation Inc. be issued from Account 7591. As requested in the email by ROSENTHAL (ABROYAN), Mechanics Bank deposited the $150,000 cashier's check into a Bank of America account number associated with LA Express Medical Transportation Inc., information which had been provided by ROSENTHAL (ABROYAN) in the email. The $150,000 paid from SUNSHINE to LA Express Medical Transportation was depleted gradually over approximately the next year, with a high percentage of the funds going to tax payments, car payments, credit card payments and payments to the owners of LA Express Medical Transportation.

   b. On September 13, 2012, Mechanics Bank received an email from ROSENTHAL (ABROYAN) stating he would need the ability to withdraw between $30,000 and $75,000 cash from his account on short notice in order to pay and tip vendors at SUNSHINE events. On September 18, 2012, $65,000 cash was issued to ABROYAN as a counter check from the Mechanics Bank San Francisco retail branch location.

   c. Of the remaining funds in Account 7591, on September 18, 2012, $80,000 was wired to Bakh Instruction Inc. in Los Angeles, California.

   d. The relationships between SUNSHINE and LA Express Medical Transportation and SUNSHINE and Bakh Instruction Inc. are currently unknown.

18. As of September 19, 2012, ROSENTHAL (ABROYAN) had disbursed $945,000 of the $950,000 funds approved by Mechanic's Bank.

   C. Failure to Pay Loans

19. After the wires to LASALLE on September 19, 2012, the balance of Account 7591 was less than $10,000 so the Mechanics Bank relationship manager sent ROSENTHAL (ABROYAN) an email on September 20, 2012 asking that he deposit money into the account so monthly loan repayments for both the loan and line of credit could fund. ROSENTHAL

5

(ABROYAN) responded on September 20, 2012 stating he would make a deposit. By October 1, 2012, no deposit had been made into Account 7591 and the Mechanics Bank relationship manager tried to call ROSENTHAL (ABROYAN) but could not reach him. At that point, Mechanics Bank realized they had been defrauded and they have not seen or heard from ROSENTHAL (ABROYAN) since late September 2012.

20.  On October 9, 2012, the first and only payment on the loans was received by Mechanics Bank. It was an automatic payment of $937.50 on the line of credit, which had been set up and approved by ROSENTHAL (ABROYAN) at the signing of the loan agreements.

  D.  False Representations by ROSENTHAL (ABROYAN) in Materials Submitted for the Mechanics Bank Loans

   1.  False Statement as to Identity

21.  The loans discussed herein were obtained by a person using the name ARMEN ABROYAN. For the reasons set forth herein, that person is believed to be DANIEL ROSENTHAL.

22.  ROSENTHAL has previously been arrested at least 11 times. On at least some of those occasions, law enforcement officers have obtained fingerprints and photographs (mug shots) of ROSENTHAL.

23.  A forensic examiner in the FBI Laboratory's Latent Print Operations Unit developed a latent fingerprint on a handwritten note given by ROSENTHAL (ABROYAN) to a Mechanics Bank employee who had met him before as part of the loan application process. The note provided Mechanics Bank with wiring instructions for a portion of the Mechanics Bank loan funds. The forensic examiner identified the latent fingerprint as ROSENTHAL's using ROSENTHAL's known fingerprints obtained from the FBI's Criminal Justice Information Services database.

24.  Mechanics Bank Account 7591 was opened by ROSENTHAL (ABROYAN) using a California Department of Motor Vehicles (DMV) identification issued in ARMEN ABROYAN's name on May 11, 2012 ("the May 11, 2012 ABROYAN CA DMV identification").

25.  As part of this investigation, I have reviewed copies of all California DMV identifications in the name of ARMEN ABROYAN, to include the May 11, 2012 ABROYAN CA DMV identification as well as three other prior versions of the identification in ABROYAN's name. From my review, it appears that the three prior identifications bear a different photograph than the May 11, 2012 ABROYAN CA DMV identification.

26.  As part of this investigation, I have also reviewed copies of all California DMV identifications in the name of DANIEL ROSENTHAL. Between June 3, 1999 and August 30, 2012, there are California DMV identifications in the name of ROSENTHAL that all appear to bear eight separate photographs of the same person. On November 13, 2014, a California DMV identification issued in the name of DANIEL ROSENTHAL that bears a photograph of a person

who may not be the same individual as the individual in all eight photographs on the prior California DMV identifications issued in ROSENTHAL's name and all eleven arrest photos of ROSENTHAL.[2]

27. A forensic examiner in the FBI's Forensic Audio, Video and Image Analysis Unit compared the photos on the May 11, 2012 ABROYAN CA DMV identification and a California DMV identification issued in ABROYAN's name on August 17, 2011. The examiner concluded that the individuals depicted in the photos do not appear to be the same individual. Additionally, the thumbprint on the May 11, 2012 ABROYAN CA DMV identification was determined by the FBI's Criminal Justice Information Services to be different than the thumbprint on the California DMV identification issued in ABROYAN's name on August 17, 2011.

28. A forensic examiner in the FBI's Forensic Audio, Video and Image Analysis Unit compared the photo on the May 11, 2012 ABROYAN CA DMV identification and an arrest photo of ROSENTHAL taken on February 23, 2007. The examiner concluded that the individuals depicted in the photos appear to be the same individual.

29. As part of the investigation, I obtained copies of closed circuit surveillance images from August 29, 2012 of the person using the name ARMEN ABROYAN at the San Francisco Mechanics Bank retail branch location.

30. An individual who has had contact with ROSENTHAL since approximately 2009, CW1, positively identified ROSENTHAL as the individual in the photo on the May 11, 2012 ABROYAN CA DMV identification. CW1 also positively and separately identified ROSENTHAL as the individual in the Mechanics Bank closed circuit surveillance images of ROSENTHAL (ABROYAN) at the San Francisco retail branch location on August 29, 2012. CW1 stated ROSENTHAL had been in prison for selling heroin and did not have a job but somehow had access to a significant amount of money because he traveled overseas extensively, lived in a penthouse, and drove an Audi sports car. CW1 stated ROSENTHAL was engaged in "credit fraud" with another individual, who is currently serving a prison sentence for a 2013 conviction of false statements on a loan application. CW1 has a criminal history which includes conspiracy to make false statements to a financial institution. He is currently on federal probation for that conviction.

---

[2] Although I am not a certified finger print examiner, I have reviewed the thumbprints on the California DMV identifications in the name of ROSENTHAL through November 13, 2014. Although the person in the photographs for the ROSENTHAL California DMV identifications through August 30, 2012 may appear to be different than the person in the photograph in the November 13, 2014 identification, the thumbprints associated for all the ROSENTHAL identifications appear similar. The thumbprint on the May 11, 2012 ABROYAN CA DMV identification was analyzed by the FBI's Criminal Justice Information Services and has been determined to be the same as the thumbprint on the California DMV identification for ROSENTHAL on November 13, 2014.

7

31. An individual who has known ROSENTHAL since high school, CW2, positively identified ROSENTHAL as the individual in the photo on the California DMV identification issued in ABROYAN's name on May 11, 2012.

   2. False Statements in Bank Statements

32. As part of the Mechanics Bank loan application, ROSENTHAL (ABROYAN) submitted the following materials regarding ABROYAN's and SUNSHINE's income, assets, and liabilities.

   a. The loan application included bank statements for Bank of America personal checking account numbers ending in 8442 (hereinafter referred to as "Account 8442") and 8455 (hereinafter referred to as "Account 8455"). The bank statements submitted for Account 8442 show ARMEN ABROYAN as the account holder and a June 30, 2012 balance of $100,033. The bank statements for Account 8455 show ABROYAN as the account holder and a June 30, 2012 balance of $2,077.

   I have reviewed the June 2012 bank statements for Account 8442 and Account 8455, which were obtained from Bank of America. The bank statements for Account 8442 and Account 8455 show the accounts as business checking accounts in the name of VEGA SOLUTIONS LLC, not ABROYAN. ABROYAN was an authorized signer on the VEGA SOLUTIONS LLC accounts but was not listed as an account holder on the statements. The balances on the June 30, 2012 bank statements for Account 8442 and 8455 are the same as the balances on the statements provided by ROSENTHAL (ABROYAN) to Mechanics Bank. I obtained and reviewed all June 2012 bank statements for all Bank of America bank accounts associated with ABROYAN or SUNSHINE, of which there are four. None of these accounts, aside from Account 8442 and Account 8455, have a June 30, 2012 account balance over $6,000. Based on my training and experience, I believe that ROSENTHAL (ABROYAN) placed the name ARMEN ABROYAN on the bank statements of VEGA SOLUTIONS LLC.

   b. The loan application included bank statements with redacted account numbers for Chase bank accounts listing SUNSHINE as the account holder on the pages submitted. The bank statements show two accounts on the each statement with a total balance of $1,208,163 on June 30, 2012. The bank statements also show total monthly balances of over $1 million for every month from January 2012 through June 2012. One of the pages of the March 2012 bank statements has an unredacted account number ending in 2851 (hereinafter referred to as "Account 2851").

   I have reviewed the June 2012 bank statement for Account 2851, which was obtained from Chase. The bank statement shows a June 30, 2012 account balance of $100 for Account 2851. The bank statement for Account 2851 shows a business in New York, not SUNSHINE, as the account holder. Further, the signature card for Account 2851

8

does not include SUNSHINE as an account holder or ABROYAN as a signer on the account. Account 2851 was opened for the first time on June 11, 2012.

Based on my training and experience, that ROSENTHAL (ABROYAN) placed the name SUNSHINE on the bank statements of another unknown entity.

c. The loan application also included other bank statements with redacted account numbers for Chase bank accounts listing ABROYAN as the account holder. Those Chase bank account statements show and a total balance of $647,986 on June 30, 2012.

I obtained and reviewed all June 2012 bank statements for all Chase bank accounts associated with ABROYAN or SUNSHINE, of which there are six. None of these accounts have a June 30, 2012 account balance over $4,000.

3. Tax Returns

33. As part of the loan application, ROSENTHAL (ABROYAN) submitted what purports to be tax returns for ARMEN ABROYAN that include information regarding SUNSHINE.

a. The loan application included copies of what purported to be ARMEN ABROYAN's 2011 and 2010 Individual Income Tax Returns and 2010 Amended Individual Income Tax Return. In the tax returns, SUNSHINE is listed on ABROYAN's return as a Sole Proprietorship. The tax returns submitted by ROSENTHAL (ABROYAN) show 2011 SUNSHINE business net income of $1,242,075 and 2010 SUNSHINE business net income of $1,146,365. The 2010 amended tax return shows ARMEN ABROYAN's original 2010 adjusted gross income as $14,167 and amended 2010 adjusted gross income as $1,158,921. All three tax returns have what purports to be a signature of ARMEN ABROYAN's and are dated May 29, 2012.

b. The 2011 and amended 2010 tax returns have stamps on them indicating they were "Received with Remittance" by the IRS in Los Angeles, California, on May 29, 2012. The total tax due on the 2011 and amended 2010 tax returns is $853,975.

c. One of the financial institutions from which ROSENTHAL (ABROYAN) obtained a business loan filed a Form 4506, "Request for Copy of Tax Return" with the IRS. The tax return transcript which the IRS provided to that financial institution, which I reviewed, stated ABROYAN's 2011 individual income tax return had been filed with the IRS on May 29, 2012 with $0 remittance.

d. An open source database lists an IRS tax lien filed on ABROYAN on March 18, 2013 for $1,022,821.

e.

9

    f. The tax preparer listed on the individual income tax returns of ARMEN ABROYAN included with the loan application was convicted of money laundering and racketeering in 2010 and as a result of that conviction has not been and is not permitted to be licensed as a tax preparer in the state of California since 2010.

    g. During my investigation, I have learned that ROSENTHAL (ABROYAN) rented a residential property in San Francisco in May 2012, the address of which was included on the loan application as his residential address. The rental term for that apartment under the rental agreement f began on May 11, 2012 and ended on August 10, 2012. ROSENTHAL's (ABROYAN's) application to rent that apartment included a 2011 individual income tax return in the name of ARMEN ABROYAN. That 2011 income tax return is different than the 2011 income tax return in the name of ARMEN ABROYAN submitted to Mechanics Bank. Specifically, there is a different tax preparer than the tax returns submitted to Mechanics Bank, a different date, and different adjusted gross income.

    h. Based on my training and experience, I believe that ROSENTHAL (ABROYAN) filed fraudulent tax returns less than two months before the loan application was submitted in order to falsely substantiate SUNSHINE's income, for which taxes have not been paid.

    4. <u>Corporation Documents</u>

34. As part of the loan application, ROSENTHAL (ABROYAN) submitted what purports to be information regarding SUNSHINE's history as a corporation.

35. The application included a copy of a document that appears to be SUNSHINE's Limited Liability Company Articles of Organization filed with the California Secretary of State on February 17, 2009. The document appears to have been signed by ABROYAN as the "Organizer" of SUNSHINE.

36. The Limited Liability Company Articles of Incorporation for SUNSHINE obtained from the California Secretary of State show that the Articles of Incorporation for SUNSHINE were filed on February 17, 2009 by "Organizer" Kevin Wessell. A Statement of Information for SUNSHINE, also obtained from the California Secretary of State, was filed on February 14, 2012 by B. Lambert listing SUNSHINE's address as 28015 Smyth Drive, Valencia, California.

37. On the website of Companies Incorporated, www.companiesinc.com, a business which advertises selling "shelf and aged corporations", the corporate name "Sunshine Daydream, LLC" is listed under "US Aged Shelf Corporations". The website lists "Sunshine Daydream, LLC" as a company in California with a "date filed" of February 17, 2009. The website lists "Sunshine Daydream, LLC" as "Sold" for a price of $6,867. The website lists a Companies Incorporated west coast headquarters address of 28015 Smyth Drive, Santa Clarita, California.

38. Based on my training and experience, I believe that use of an aged shelf corporation is indicative of attempting to make it seem that a business has been in existence for longer than it

10

has actually been in existence. I also believe that ROSENTHAL (ABROYAN) placed the name ARMEN ABROYAN on a copy of SUNSHINE's Articles of Organization, in order to support the false statement he had made to Mechanics Bank that SUNSHINE had an established three year history of doing business as an event planning company.

    5. Financial Statements

39. The loan application included SUNSHINE's June 30, 2012 balance sheet and income statement. The balance sheet shows accounts receivable of $842,098 and the income statement shows year-to-date sales revenue of $2,563,845.

40. Searches on the Internet and open source databases have been unsuccessful in obtaining any information regarding the customers listed on SUNSHINE's aged accounts receivable report.

41. The loan application included the address of SUNSHINE's website as www.sunshinedaydreamproductions.com. According to the hosting website, that website was established on or about June 13, 2012. In addition, with the exception of the company name, SUNSHINE's website is nearly identical to another website for an event planning company located in Los Angeles, California.

42. Based on my training and experience, I believe that the lack of information readily available regarding SUNSHINE's purported customers and the lack of SUNSHINE's established interest history and office space are inconsistent with a business purportedly in existence for almost four years and receiving over $4,000,000 in annual revenue for planning high-end events.

    6. Failure to Discuss Liabilities / Other Loans

43. ROSENTHAL (ABROYAN) began applying for business loans at various financial institutions in July 2012. In a four month period, he was able to secure multiple loans totaling millions of dollars from multiple financial institutions. On the date ROSENTHAL (ABROYAN) signed the Mechanics Bank loan agreements, he had already received loan proceeds from other financial institutions. ROSENTHAL (ABROYAN) did not disclose to Mechanics Bank that he had already obtained loans totaling at least $2,595,000 from at least three other financial institutions.

44. Neither the loan application nor the supporting documentation submitted by ROSENTHAL (ABROYAN) throughout Mechanics Bank's loan approval process references loans from other financial institutions or debt outstanding other than personal credit card, automobile loans and mortgage debt in ABROYAN's name totaling $400,000.

    7. False Statements Regarding Security for the Loans

45. Between August 1, 2012 and September 4, 2012, seven different financial institutions, including Mechanics Bank, recorded Uniform Commercial Code (UCC) filings with the California Secretary of State regarding SUNSHINE. Each of the filings declared the same equipment from LASALLE as security for loans to SUNSHINE. However, each of the filings

11

was terminated by an unknown party using the UCC website within six days of being recorded. Mechanics Bank did not approve the termination of the UCC filing associated with their loan to and secured interest in SUNSHINE.

46.  When another financial institution asked ROSENTHAL (ABROYAN) for an explanation of the Mechanics Bank UCC filing on the same equipment he was attempting to finance with them, ROSENTHAL (ABROYAN) sent an email response on October 4, 2012 stating, "The UCCs should be terminated. I told them I was going with your company. They said they issued the UCC prematurely and they would terminate them."

E.  Abandonment of Premises Leased by ROSENTHAL (ABROYAN)

48.  ROSENTHAL (ABROYAN) rented space at 50 California Street, Suite 1500 with a contract that began on June 1, 2012 and ended on November 30, 2013. Suite 1500 of 50 California Street is occupied by an office space rental company which leases individual offices within Suite 1500. The office rented by ROSENTHAL (ABROYAN) for SUNSHINE contained three desks. When shown the photo on the California DMV identification issued in ABROYAN's name on May 11, 2012, the office manager of Suite 1500 identified the individual in the photo as the individual he knew as ARMEN ABROYAN who had rented and used SUNSHINE's office. The office manager stated he never saw anyone except ROSENTHAL (ABROYAN) use the office. ROSENTHAL (ABROYAN) has not made a rental payment for the office within Suite 1500 since August 9, 2012. The last time the front desk receptionist at 50 California Street, Suite 1500 saw ROSENTHAL (ABROYAN) was in late September or early October 2012 when he picked up a final package which had arrived for SUNSHINE.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

49. Based on the foregoing information, I believe there is probable cause to believe that DANIEL ROSENTHAL knowingly, intentionally, and with the intent to defraud executed, attempted to execute, and participated in a material scheme and artifice to defraud multiple financial institutions and to obtain moneys, funds, credits, assets, or other property owned by, and under the custody and control of Mechanics Bank, by means of false or fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

50. WHEREFORE, I also request that a complaint and arrest warrant issue for DANIEL ROSENTHAL.

_____
ELIZABETH J. HADLEY
Special Agent
Federal Bureau of Investigation


SUBSCRIBED AND SWORN TO BEFORE ME
THIS ___ DAY OF _____, 2014

_____
HON. LAUREL BEELER
United States Magistrate Judge

13